## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

In re

**MARK ROBERTS ZIEGLER**,

Case No.  **12-61681-11**

Debtor.

## MEMORANDUM OF DECISION

At Butte in said District this 12th day of December, 2012.

Pending in this Chapter 11 case are:  (1) Debtor's motion for turnover of commercial rental income monies held by a receiver appointed by a Washington state court (Docket No. 9); (2) NW Evergreen Opportunities I, LLC's ("Evergreen") motion to excuse compliance with turnover requirements of 11 U.S.C. § 543(a) and for stay relief under 11 U.S.C. § 362(a) concerning receivership (Dkt. 25); and (3) Debtor's motion to use cash collateral and for adequate protection of mortgage holders' interest (Dkt. 16).  Objections to Debtor's motions were filed by Evergreen, and Debtor filed a response in opposition to Evergreen's motion.  A hearing on these matters was held at Missoula on November 8, 2012[1].  Debtor Mark Roberts Ziegler ("Ziegler" or "Debtor") appeared and testified, represented by attorney Jon R. Binney ("Binney") of Missoula.  Evergreen was represented by attorney Erika Peterman ("Peterman") of Missoula.  Exhibit ("Ex.") 1, a Receiver's Report regarding Debtor's commercial property in Kennewick, Washington (the "Kennewick Mall") was admitted into evidence without objection.

---

[1]Another hearing was scheduled to be held on December 6, 2012, on Evergreen's motion and Debtor's response, but the parties filed a stipulation (Dkt. 61) stating that the motion was fully submitted and briefed.  The Court vacated the December 6, 2012, hearing.

1

The Court was requested to take judicial notice of Evergreen's Proof of Claim No. 2.  At the conclusion of the parties' cases-in-chief, the Court took Debtor's motion to use cash collateral under advisement, and granted the parties 7 days to file stipulated facts[2] and briefs regarding Debtor's motion for turnover.  The briefs have been filed and reviewed by the Court, together with the record and applicable law.  All pending motions are ready for decision.  For the reasons set forth below Evergreen's objections are overruled; Evergreen's motion to excuse compliance with turnover and for stay relief is denied; and Debtor's motion for turnover of monies held by the receiver and motion to use cash collateral both are granted.

This Court has exclusive jurisdiction of this Chapter 11 case under 28 U.S.C. § 1334(a). This Memorandum includes the Court's findings of fact and conclusions of law regarding turnover and use of cash collateral.

### FACTS & PROCEDURAL HISTORY

Mark Roberts Ziegler lives in Missoula, and he owns two commercial properties.  One property is located at 2710 Brooks Street in Missoula, Montana (the "Brooks Street property"), which he acquired as part of a § 1031 exchange in March of 2007.  The second property is a 14,000 square foot building located in Kennewick, Washington, referred to as the "Kennewick Mall[3]" which Ziegler acquired in March of 2007.

The Brooks Street property has two commercial tenants – a Subway sandwich shop and a combination coffee shop/office equipment store.  Ziegler testified that he does not have a property manager for the Brooks Street property, and that it has little turnover in tenants.  He

---

[2]Stipulated facts were never filed.

[3]The Kennewick Mall is also known as the "Columbia Plaza."  Ex. 1.

2

testified that an appraisal was prepared for the Brooks Street property which valued it at approximately $795,000. At first, Ziegler testified that he does not know the current value of the Brooks Street property, but later he testified that he values it at the sum of $800,000 based on $60,000 in annual positive cash flow. He testified that when he acquired the Kennewick Mall it was appraised with a value of $2,625,000, and that a later appraisal shows it had a value of $2 million in 2011.

Ziegler took out a loan from U.S. Bank in the amount of $249,000 by a term note he signed on August 23, 2007. The note required monthly payments in the amount of $1,905.03. Ziegler gave U.S. Bank a mortgage on the Brooks Street property to secure the note. Ziegler also signed a second promissory note. He testified that the total of the two promissory notes owed is $2,180,000[4].

Ziegler missed some payments to U.S. Bank. He entered into a Forbearance and Modification Agreement with U.S. Bank in March of 2011, which he testified required a payment to U.S. Bank in the amount of $10,000 per month[5]. At the time of the forbearance agreement, Ziegler testified, U.S. Bank gave him information that it valued the Brooks Street property at $800,000.

At some point Evergreen acquired U.S. Bank's rights under the notes and mortgages. The two notes were cross collateralized. Ziegler admitted that both notes went into default. He testified that a receiver was appointed in the State of Washington, and that the receiver began collecting the rents from the Kennewick Mall. Ex. 1 is the receiver's report for September 2012

---

[4]Neither note was offered for admission, and neither was admitted into evidence.

[5]The Forbearance and Modification Agreement was not offered or admitted into evidence.

3

for the Kennewick Mall prepared by the receiver Ted Durant & Associates.  The cover letter for Ex. 1 states that the operating account balance as of October 7, 2012, was $47,330.10.

Debtor filed his voluntary Chapter 11 petition on October 18, 2012, listing assets in the total amount of $5,845,021.71 and liabilities in the total amount of $4,208,536.85.  Schedule A lists Debtor's real property, including the property located at 2710 Brooks Street in Missoula, and property described at "7901-7935 W. Grandridge Blvd" in Kennewick, WA.  According to Schedule A the Debtor's interest in the Brooks Street property has a current value in the amount of $800,000, and secures a claim in the amount of $216,508.85.  The Debtor's interest in the Kennewick Mall is scheduled at a current value in the amount of $2,200,000, and secures a claim in the amount of $1,888,000.  Schedule D (Creditors Holding Secured Claims) lists Evergreen as having a $1,888,000 claim secured by the Kennewick Mall, and a $215,508.85 claim secured by the Brooks Street property.  Neither of Evergreen's claims has an unsecured portion listed on Schedule D, and neither is marked as contingent, unliquidated or disputed.

Debtor filed his motions for turnover of property and for use of Evergreen's cash collateral on October 22, 2012.  The motion for turnover requests the Court order Evergreen and the receiver Ted Durant & Associates to turn over rental income monies, which are held by the receiver under a Washington Superior Court order[6], to the Debtor under 11 U.S.C. §§ 105, 361 and 363 in order to provide the Debtor with operating capital and liquidity and avoid irreparable harm to the estate.  Debtor's motion to use cash collateral seeks interim and final orders authorizing Debtor to use cash collateral to address liquidity constraints, and to grant Evergreen

---

[6]Washington court orders were docketed by Evergreen at Dkt. 13, 15, 23, 25, 40, and 51, but were not offered or admitted into evidence.

adequate protection.

On October 31, 2012, Evergreen filed Proofs of Claim Nos. 1 and 2.  Claim 1 asserts a secured claim in the amount of $1,935,207.78, secured by both the Brooks Street property and the Kennewick property[7].  Claim 2 asserts a secured claim in the amount of $245,217.58 secured by both properties.  No objections have been filed to allowance of Claim 1 or 2.

Evergreen filed oppositions to both Debtor's motion for turnover and motion to use cash collateral, and filed a motion to excuse compliance with turnover requirements of 543(A) and stay relief under 362(a) concerning the receivership, on October 30, 2012.  In Evergreen's opposition to turnover it argues that prepetition rents are encumbered by an absolute and present assignment of rents in favor of Evergreen, under which the Debtor has no interest in the rents, and therefore are not property of the estate under 11 U.S.C. § 541 and not subject to turnover under § 543.  Evergreen did not offer any written evidence or testimony regarding the assignment of prepetition rents related to the Kennewick Mall at the hearing.

In Evergreen's opposition to Debtor's motion to use cash collateral Evergreen argues that its appraisals are not complete so it does not know the amount of its equity cushion[8].  Evergreen objects that the Debtor has not presented a budget and so has not shown that he can make the proposed adequate protection payment.  In addition Evergreen contends that the proposed adequate protection payments are not sufficient adequate protection because the monthly interest exceeds the amount of the proposed payments.  Evergreen offered no evidence at the hearing

---

[7]Claims 1 and 2 have attachments including note, deed of trust, and an assignment from U.S. Bank to Evergreen dated February 8, 2012.  None of those documents was offered or admitted into evidence at the hearing.

[8]Evergreen offered no appraisals for admission into evidence at the hearing.

regarding the amount of monthly accruing interest.  Evergreen argues that the Debtor might use the rents for personal expenses and for expenses unrelated to the two properties.

Evergreen's motion to excuse compliance with turnover requirements of § 543(a) and for stay relief under § 362(a) concerning receivership argues that the Debtor will not use the property for Evergreen's benefit because he defaulted on his payments, that Debtor has mismanaged the property, that he resides in Missoula far away from the Kennewick Mall while Evergreen has a receiver in place.  Evergreen requests relief from the stay so that the receiver appointed by the state court may stay in place and continue his management of the Kennewick Mall.

On November 7, 2012, the Debtor filed an application to employ a property manager for the Kennewick Mall.  That application was approved by Order entered on November 13, 2012, approving employment of Jerry D. Abrams and Jerry D. Abrams Company, Inc., as real estate management company.  Ziegler testified that currently there are 10 tenants out of 11 units in the Kennewick Mall, and that, while occupancy in 2011 was 54%, now it is 95% occupied.  He testified that he is current on his payments of insurance premiums for the Kennewick Mall, and that he offers to pay Evergreen $10,000 per month on the note for the Kennewick Mall.  He testified that the Kennewick Mall is generating $22,000 per month in rents, and nets $14,500 per month so that he has the ability to make the proposed $10,000 monthly adequate protection payment to Evergreen for the Kennewick Mall.  When asked on direct examination for his opinion of the value of the Kennewick Mall, Ziegler testified that he believes it has a value of $2,200,000, and that the total value of his two properties is between $2,800,000 and $3,000,000[9].

---

[9]On cross examination Ziegler answered "Yes" when asked whether he agreed that an updated appraisal of the Kennewick property would be the best value.  However, no updated appraisal was offered, and the only evidence of value in the record is Ziegler's opinion.

Ziegler testified that the Subway tenant at Brooks Street property is insured with a $2 million commercial general liability and $300,000 damage to premises policy, as of 10/3/2012, which remains in effect.  He testified that the Brooks Street property earns rental income from two tenants in the total amount of $5,090, $3,500 of which is paid by the Subway shop and $1,590 from the other tenant.  In addition, he testified that Subway pays 80 percent (80%) of the property taxes for the Brooks Street property and pays 20% of the water/sewer charges, leaving Ziegler's share for taxes, water/sewer and maintenance at about $160 per month or $1,920 per year.  Ziegler testified that his excess rents are deposited into his Debtor-in-Possession ("DIP") account to pay for expenses.

Ziegler testified that he is proposing making monthly adequate protection payments to Evergreen in the amount of $1,905.03 for the Brooks Street property, and that he has the ability to make that payment from the rents.  He testified that the Brooks Street property is worth far more than the $200,000 owed to evergreen.  Ziegler testified that his proposed adequate protection payments plus the excess value of his two properties constitutes adequate protection for Evergreen.

Evergreen's counsel questioned Ziegler on cross examination about the budget and monthly expenses for the two properties.  Ziegler testified that Evergreen knows the expenses for the Kennewick property through the appointed receiver.  Ex. 1 is the receiver's report showing total expenses for the Kennewick Mall through September 30, 2012, in the amount of $57,627.32, against operating income of $197,566.21.

At the time of the hearing on November 8, 2012, Ziegler had not submitted a budget[10]. He testified that the two properties are his only source of income, and that he would use some of the profits for his living expenses during the term of his plan. He testified that there is approximately $4,000 per month net income from the Kennewick Mall, and approximately $3,000 per month net income from the Brooks Street property.

Ziegler testified his expenses before his bankruptcy case and now include a $2,000 mortgage payment, a vehicle payment of approximately $600 per month, and about $2,400 for gas, insurance and food. He testified that he wants to be able to use up to $5,000 per month of Evergreen's cash collateral if he needs it for extraordinary expenses. He explained that his intent is to have a cushion to give him confidence that if his strip mall has a large extraordinary expense that he will have the ability to pay it. He testified that any amount of funds turned over by Evergreen pursuant to the motion for turnover will be deposited into his DIP account.

## DISCUSSION

### I. Use of Cash Collateral.

Use of cash collateral is governed by 11 U.S.C. § 363(c)(2) which forbids a debtor from using cash collateral without either the consent of the secured creditor or the authorization of the Court. *Heiser v. Alaska USA Federal Credit Union (In re Heiser)*, 17 Mont. B.R. 53, 63 (Bankr. D. Mont. 1998), quoting *In re Lough*, 163 B.R. 586, 587-88 (Bankr. D. Idaho 1994). The Ninth Circuit has found that "the purposes underlying § 363(c)(2) and (4) require that a debtor seek affirmative express consent from all parties involved before using cash collateral." *In re Gall*, 12

---

[10]On November 15, 2012, Debtor filed a projected budget attached to an affidavit. Docket No. 54. Neither the affidavit nor budget were admitted, and neither are part of the record in these contested matters.

Mont. B.R. 133, 138 (Bankr. D. Mont. 1993), quoting *Freightliner Market Development Corp. v. Silver Wheel Freight*, 823 F.2d 362, 368 (9th Cir. 1987).  The Ninth Circuit wrote:  "Unless the Trustee gets a court order or consent, he is obligated to segregate and account for any cash collateral in his possession, custody, or control. 11 U.S.C. § 363(c)(4)." *Freightliner*, 823 F.2d at 367.

In the instant case Evergreen objects to Debtor's motion to use cash collateral.  If the creditor does not consent, the Court may approve the use of cash collateral, which will normally require adequate protection for the secured creditor.  *See* 3 COLLIER ON BANKRUPTCY ¶ 363.03[4] (16th ed. 2012); *People's Capital and Leasing Corp. v. Big3D, Inc. (In re Big3D, Inc.)*, 438 B.R. 214, 233 (9th Cir. BAP 2010) (concurring opinion).  A recent decision by this Court discussed the requirement of adequate protection to use cash collateral *In re Field of Dreams Tree Farm, Inc.*, 2012 WL 1066335, *9-*10:

> The Court would note, however, that Debtor requests permission to use cash collateral in this case pursuant to 11 U.S.C. § 363(c)(2), yet offers FIB no adequate protection. This Court discussed the concept of adequate protection in *In re WRB West Associates Joint Venture,* 106 B.R. 215, 219–20 (Bankr.D.Mont.1989):
>
>> In a classic sense, adequate protection payments should be applied to compensate a secured creditor for any diminution in the value of collateral as a result of use, depreciation, destruction or other caused reduction in value. 11 U.S.C. § 361; 11 U.S.C. § 363(e); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., ( In re Timbers of Inwood Forest Assocs., Ltd.*), 793 F.2d 1380, 1412 n. 57 (5th Cir.1986) (collecting supporting cases), *aff'd, United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, [484] U.S. [365], 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *General Elec. Mortgage Corp. v. South Village, Inc. (In re South Village, Inc.),* 25 B.R. 987, 994 (Bkrtcy.D.Utah 1982) ('adequate protection was protection ... against depreciation of the collateral when it erodes the allowed secured claim.')."
>
> [*Matter of Kain*, 86 B.R. 506, 511, 513 (Bankr.W.D.Mich.1988).]

9

On the issue of adequate protection required by § 363(d) and (e), *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir.1987) holds:

> "In recognition of the powers created in bankruptcy law to adjust debts and creditors' interest, Congress realized the need to protect creditors from unfair treatment. Hence, it codified the concept of adequate protection into the several aggressive remedies available to debtors and bankruptcy trustees. *See 2 Collier on Bankruptcy* ¶ 361.01[1] (15th ed.1979). The whole purpose in providing adequate protection for a creditor is to insure that the creditor receives the value for which the creditor bargained prebankruptcy. House Rep. No. 95–595, 95 Cong., 2d Sess. 53, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6295. In determining these values, the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis. *In re Martin*, 761 F.2d 472 (8th Cir.1985); *In re Monroe Park*, 17 B.R. 934 (D.C.Del.1982). Since 'value' is the linchpin of adequate protection, and since value is a function of many factual variables, it logically follows that adequate protection is a question of fact. *In re Martin*, 761 F.2d at 472; *In re George Ruggiere Chrysler–Plymouth, Inc.,* 727 F.2d 1017 (11th Cir.1984); *In re Bank Hapoalim B.M., Chicago Branch v. E.L.I., Ltd.*, 42 B.R. 376 (D.C.N.D.Ill.1984); *Brookfield Production Credit Association v. Borron*, 36 B.R. 445 (D.C.E.D.Mo.1983), aff'd, 738 F.2d 951 (8th Cir.1984)."

*In re Mellor*, 734 F.2d 1396, 1400 (9th Cir.1984) addressed the issue on a basis of "equity cushion" as adequate protection in holding:

> "While the term 'adequate protection' is not defined in the code, 11 U.S.C. § 361 sets forth three non-exclusive examples of what may constitute adequate protection: 1) periodic cash payments equivalent to decrease in value, 2) an additional or replacement lien on other property, or 3) other relief that provides the indubitable equivalent. *In re Curtis*, 9 B.R. 110, 111–112 (B.Ct .E.D.Penn.1981).

An equity cushion is the classic form of protection for a secured debt, and its existence, standing alone, can provide adequate protection under the code. *In re Interstate Distributing Co., Inc.*, 13 Mont. B.R. 86, 89–90 (D.Mont.1993) ( citing In re Mellor, 734 F.2d at 1400).

The evidence in this case shows no equity cushion. The lack of equity cushion, combined with Debtor's failure to seek and obtain authority to use cash collateral before spending $5,930.49 of FIB's cash collateral cannot be ignored by

10

this Court.

*Field of Dreams Tree Farm*, 2012 WL 1066335 at *9-*10.

By contrast, in the instant case Ziegler proposes to make adequate protection payments on both notes in the amounts set forth in the notes, $10,000 per month and $1,905.03 per month, and in addition Ziegler contends that Evergreen is protected by an equity cushion based on his opinion of the value of the 2 properties. He testified that both properties are worth between $2.8 million and $3 million, while the total of Evergreen's two Proofs of Claim filed in this case is approximately $2,180,425.28.

This Court has explained:

> While a debtor's estimate of value may be acceptable in certain cases, the Court may give little weight to the opinion if not based upon sufficient facts. *In re Schenk*, 67 B.R. 137, 140 (Bankr.Mont.1986). The determination of the weight to be given expert testimony or evidence is a matter within the discretion of the trier of fact—which in a nonjury proceeding like the instant case is the bankruptcy court. *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir.1990), Arkwright *Mutual Insurance Co. v. Gwinner Oil Inc.*, 125 F.3d 1176, 1183 (8th Cir.1997); Barry Russell, *Bankruptcy Evidence Manual*, 2000 Ed., § 702.2. In this contested matter, the trial court acts as a factfinder as well as a gatekeeper. In such instances the court's discretion includes the weight to be accorded to the evidence. 4 Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 702.05[2][a] (2nd ed.2000).

*In re Schmitt*, 20 Mont. B.R. 57, 75 (Bankr. D. Mont. 2002).

In the instant case, Ziegler testified as to the basis of his opinion regarding the valuation of the two subject properties. He referred to appraisals performed in relation to the Kennewick Mall by U.S. Bank, and his own opinion of the value based on the income stream. Ziegler is an experienced businessperson operating commercial properties. The Court had the opportunity to observe his demeanor when testifying under oath and cross examination. Finally, Ziegler's value testimony was uncontroverted. Evergreen's objections referred to appraisals, but Evergreen called

no witnesses and offered no exhibits for admission.  The Court finds that Ziegler is a credible witness and his testimony is entitled to conclusive weight.

Ziegler proposes to make adequate protection payments equal to the payments required under the promissory notes in the amounts of $10,000 and $1,905.03 per month, respectively.  The two properties both are insured, as shown by the evidence.  Evergreen is protected by an equity cushion, shown according to the evidence, ranging from more than $600,000 up to more than $800,000.  The evidence further shows that the Debtor needs use of Evergreen's cash collateral for operating capital and to reorganize.  Based on this uncontroverted evidence[11], the Court will grant Debtor preliminary use of cash collateral.  The Court finds that Evergreen is oversecured and has adequate protection sufficient under § 363(c)(2)(B) for the Court to authorize the Debtor's use of Evergreen's cash collateral.

However, the Debtor did not submit a written budget in time for its admission into evidence.  The only evidence in the record is Debtor's testimony that he has need for $2,000 per month to pay his mortgage, $600 per month for his vehicle payment, and $2,400 for gas, insurance and food.  These amounts total $5,000 per month, an amount which the Court will authorize the Debtor to use Evergreen's cash collateral in addition to making the adequate protection payments. The Court will schedule a final hearing on Debtor's motion to use cash collateral in any amounts over what is authorized above, on January 10, 2013, where the Debtor may offer evidence in support of his motion to use additional cash collateral.

## II.  Motion for Turnover/Evergreen's Objection & Motion to Modify Stay.

Debtor moves for turnover of the $47,330.10 shown held by the receiver in Ex. 1.

---

[11]Evergreen argued that the adequate protection payments are insufficient to pay the accruing interest, but offered no witness testimony or exhibit in proof of its argument.

Evergreen objects contending that all prepetition rents held by the receiver under Washington law were absolutely assigned to Evergreen under the deed of trust, that Ziegler was divested of all title and interest in the rents and they are not property of the estate under § 541(a)(1), citing *Sovereign Bank v. Schwab*, 414 F.3d 450, 455 (3rd Cir. 2005).  Therefore, Evergreen argues, the rents are not subject to turnover under § 543, and it requests to be excused from the turnover requirements of § 543(a) and for relief from the automatic stay so that the receiver can remain in place as authorized in the deed of trust and the Washington court order[12].

With respect to 11 U.S.C. § 105(b)'s prohibition against appointing a receiver, Evergreen argues that the statute only relates to appointment of receivers within the bankruptcy case itself, and § 105(a) does not authorize this Court to set aside the Washington state court order appointing the receiver.  Evergreen contends that it and the estate are better served if the receivership continues because the Debtor has no budget and had defaulted and stopped making payments, the rents were subject to an absolute assignment under the deed of trust, Debtor resides in Montana not in Kennewick and so a local operator would be required.

Debtor argues that the receiver cannot remain in place because § 105(b) prohibits a court from appointing a receiver except temporarily under § 543(d) while it decides whether to abstain or require turnover, citing *In re Stratasec, Inc.*, 324 B.R. 156, 157 (Bankr. D. Col. 2004).  Debtor argues that the receiver appointed by the Washington court was not appointed on a temporary basis and there is no request that this Court abstain.  Debtor requests turnover of the rents held by

---

[12]Evergreen's brief is accompanied by portions of a receiver's report dated November 6, 2012, and an order of the Superior Court of Washington in and for Benton County in case No. 12-2-01540-3, dated July 20, 2012, regarding appointment of a receiver and preliminary injunction.  Neither document was offered at the November 8, 2012, hearing, and neither document was admitted into evidence.  They are not part of the record.

the receiver so that he can take control and use the rents in his reorganization.

Debtor argues that under Washington law the title to the rents was not transferred to the assignee, but rather the assignee had a perfected security interest in the rents and the Debtor still owns them, citing *In re Schill*, 2006 WL 4811980 (W.D. Wash. 2006). Debtor requests that the receiver be ordered to turn over the rents so that the Debtor may have operating cash and working capital.

Section 541(a) of the Bankruptcy Code defines "[p]roperty of the estate" to include "all the following property, wherever located and by whomever held:"

> (1) . . . all legal *or* equitable interests of the debtor in property as of the commencement of the case.   (Emphasis added).

In discussing the broad definition of "property of the estate", this Court has written:

> Section 541(a)(1) of the Bankruptcy Code is intended to include in the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." *In re Campbell (Balyeat Law Offices v. Campbell)*, 14 Mont. B.R. 132, 140-41 (9th Cir. BAP 1995). In *Campbell* the BAP wrote:
>
>> The legislative history indicates that the scope of § 541(a)(1) is broad. *See United States v. Whiting Pools, Inc.*, 468 U.S. 198, 205 (1983). Section 541(a)(1) is intended to include in the estate any property made available to the estate by any other provisions of the Bankruptcy Code. *Id.* (*citing* H.R. Rep. No. 95-595, p. 367 (1977)). Several provisions in the Code permit the trustee to recover property in which the debtor did not have a possessory interest when the bankruptcy petition was filed. *See, e.g.,* 11 U.S.C. §§ 543, 544, 547 & 548; *Whiting Pools,* 462 U.S. at 205. Thus, "[a]n estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions." *Owen v. Owen*, 500 U.S. 305, 308 (1991).

*In re Weatherwax*, 16 Mont. B.R. 304, 308-09 (Bankr. D.Mont. 1997).

14

To determine the estate's interest in the rents, the Court must examine state law because state law determines the extent of a party's interests in property and when such interests expire. *In re Contractors Equip. Supply Co.*, 861 F.2d 241, 244 (9th Cir. 1988). *See also Nobelman v. American Savings Bank*, 508 U.S. 324, 329 (1993) ("In the absence of a controlling federal rule, we generally assume that Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such '[p]roperty interests are created and defined by state law.' *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). *See also Barnhill v. Johnson*, 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992)").

Evergreen cites *Sovereign Bank* as support for its argument that since the receiver holds the rents pursuant to the deed of trust and state court order, Evergreen obtained title and the rents no longer are property of the estate. 414 F.3d at 453, citing *Commerce Bank v. Mountain View Village, Inc.*, 5 F.3d 34, 38-39 (3rd Cir. 1993).

The property interests in *Sovereign Bank* and *Commerce Bank* were defined by Pennsylvania state law, and "Pennsylvania follows the title theory whereby the mortgage is considered a conveyance in fee simple to the creditor. *Commerce Bank*, 5 F.3d at 38." *Sovereign Bank*, 414 F.3d at 453 n. 5. Washington law is different. Washington is a "lien theory" jurisdiction wherein a deed of trust merely creates a security interest and title to property remains with the grantor. *Olympic Coast Investments, Inc. v. U.S. Bank Nat. Ass'n*., 101 Wash. App. 1003, 2000 WL 713932 *2 (Wash. App. Div. 2, 2000). In a judicial foreclosure of a deed of trust in Washington, the grantor retains title to the property until the sheriff's deed is delivered to the purchaser after the sheriff's foreclosure sale. *Id.*, citing *Kezner v. Landover Corp*., 87 Wash. App. 458, 463, 942 P.2d 1003 (1997), review denied, 134 Wash .2d 1020, 958 P.2d 316

15

(1998); *First Fed. Savings & Loan Ass'n v. City of West Richland*, 39 Wash.App. 401, 40506, 693 P.2d 171 (1985).  The court in *Kezner* states that "rent as it becomes due is real property" and that any interest in such property which is foreclosed upon "is conveyed upon sale."  87 Wash.App at 466-67, 942 P.2d at 1007-08.

The instant case involves rents held by a receiver under Washington law, a lien theory jurisdiction.  *Olympic Coast Investments, Inc. v. U.S. Bank Nat. Ass'n.*, 2000 WL 713932 at *2.  Therefore, the cases cited by Evergreen, *Sovereign Bank* and *Commerce Bank*, which are based on a title theory jurisdiction (Pennsylvania), are not applicable to Washington rents.  That brings us to the state of the record.

Evergreen called no witnesses at the hearing to testify, and offered no exhibits for admission.  The only exhibit admitted into evidence is Ex. 1, the receiver's report.  There is no evidence in the record that the Washington state court ordered a sheriff's sale, or that a sale of the rents or Kennewick Mall took place.

Evergreen attached court orders, notes, deeds of trust, and other documents to several pleadings which it filed in this case.  However, none were offered for admission into evidence at the hearing, and none were admitted.  "[A]rguments and statements of counsel are not evidence." *Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys.)*, 482 F.3d 1118, 1122 n.1 (9th Cir. 2007).  This Court has noted that attorney argument is not admissible in evidence and therefore not relevant.  *Hurley v. Student Loan Acquisition Auth. of Ariz., et al.*, (*In re Hurley*), 258 B.R. 15, 23 (Bankr. D. Mont. 2001) (An attorney's argument is not evidence); *United States v. Velarde-Gomez*, 224 F.3d 1062, 1073 (9th Cir. 2000); *Exeter Bancorporation v. Kemper Securities Group, Inc.*, 58 F.3d 1306, 1312 n.5 (8th Cir. 1995) (Statements of counsel are not

16

evidence and do not create issues of fact), citing *United States v. Fetlow*, 21 F.3d 243, 248 (8th Cir. 1994), *cert. denied*, 513 U.S. 977, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994); *In re Nielsen*, 211 B.R. 19, 22 n.3 (8th Cir. BAP 1997) (Neither statements of counsel nor exhibits to a brief are evidence unless expressly stipulated as admissible evidence); *Haymaker v. Green Tree Consumer Discount Co.*, 166 B.R. 601, 607 (Bankr. W.D. Pa. 1994) (Documents attached to debtors' motion do not constitute evidence and may not be considered by the court).

      The Court is not aware that the Debtor expressly stipulated that the notes, Washington state court orders or other documents attached to Evergreen's filings are admissible evidence. The hearing minutes and record of exhibits introduced make no such reference.  Further, taking judicial notice of Evergreen's Proofs of Claim is no substitute for offering an exhibit for admission into evidence at a hearing, subject to objection and cross examination.  Under Fed. R. Evidence 201(b) the court may judicially notice an adjudicative fact, that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  The contents of the notes, Forbearance and Modification Agreement, and Washington state court orders are not, in this Court's view, adjudicative facts that are not subject to reasonable dispute.  On the contrary, Debtor disputes the reach and meaning of the assignments of rents, the Forbearance and Modification Agreement, Washington state court orders and other documents which were not admitted into evidence.  Given the Debtor's uncontroverted testimony with relation to his motion for turnover, the Court concludes that the Debtor has satisfied his burden of proof for turnover of the rents under § 543.

      In *Stratesec*, the court recognized that under § 543(d) a bankruptcy court may temporarily

permit a receiver to remain in place while the court decides whether to abstain to the receivership proceeding, or instead to require the receiver to turn over the property of the estate to the trustee (or debtor-in-possession) if no trustee has been appointed.  324 B.R. at 157, citing *In re Plantation Inn Partners*, 142 B.R. 561 (Bankr. S.D. Ga 1992).  The court noted that allowing a receiver to continue indefinitely appeared to be inconsistent with the Bankruptcy Code.  *Id.*; *Plantation Inn Partners*, 142 B.R. at 564.

In the instant case Evergreen asks for relief from the stay so that the receiver can stay in place.  The court in *Stratasec* noted that a receiver's acts can be controlled by the receivership court, thus raising the potential of a conflict with the bankruptcy court's power to control the conduct of the debtor-in-possession.  *Stratasec*, 324 B.R. at 157.  The court noted that if a fiduciary is necessary in a bankruptcy case it should be a trustee appointed by the United States Trustee subject to the caps on compensation provided under the Code.  *Id.* at 158.  In the instant case no evidence exists in the record explaining the Washington receiver's compensation, and the only evidence is the Debtor's testimony that he needs the Kennewick Mall rents for operating cash and working capital to fund his reorganization.

> Under 11 U.S.C. § 362(a), "[a] bankruptcy filing imposes an automatic stay of all litigation against the debtor." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citing 11 U.S.C. § 362(a)), except in those cases specifically enumerated in § 362(b).  The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws.  It gives debtors a breathing spell from creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits debtors to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove them into bankruptcy.  S.Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5840-41.

*In re Mittlestadt*, 20 Mont. B.R. 46, 50 (Bankr. D. Mont. 2002), quoting *In re Westco Energy,*

18

*Inc.*, 18 Mont. B.R. 199, 211-12 (Bankr. D. Mont. 2000).

This Court explained the standard for modifying the stay for "cause" under § 362(d)(1) in

*Westco*:

> Section 362(d), however, provides that, "[on request of a party in interest and after notice and a hearing, the court shall grant relief from the [automatic] stay" in three instances.  The subsection relevant to these proceedings is § 362(d)(1), which allows for the granting of relief from the automatic stay "for cause".  What constitutes cause for purposes of § 362(d) "has no clear definition and is determined on a case-by-case basis." *Tucson Estates*, 912 F.2d at 1166.  *See also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In the Matter of Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (Relief from the automatic stay may "be granted 'for cause,' a term not defined in the statute so as to afford flexibility to the bankruptcy courts.").

*Westco*, 18 Mont. B.R. at 211-12.  The bankruptcy court's decision on a motion for relief from

the automatic stay is subject to the discretion of the court, and subject to review for an abuse of

discretion.  *In re Leisure Corp.*, 234 B.R. 916, 920 (9th Cir. BAP 1999).

The party seeking relief must first establish a prima facie case that cause exists for relief

under § 362(d)(1).  *United States v. Gould*, 401 B.R. 415, 426 (9th Cir. BAP 2009); *Duvar Apt.*

*Inc. v. FDIC (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (9th Cir. BAP 1996).  Except for the

issue of the Debtor's equity in the property, in a proceeding on a motion to modify the automatic

stay the Debtor has the burden of proof to show that the stay should not be modified or annulled.

*In re Mittlestadt*, 20 Mont. B.R. at 52; *In re Hungerford*, 19 Mont. B.R. 103, 133-34 (Bankr. D.

Mont. 2001); *In re National Environmental Waste* Corp., 191 B.R. 832, 836 (Bankr. C.D. Cal.

1996), *aff'd*, 129 F.3d 1052 (9th Cir. 1997); 11 U.S.C. § 362(g)(2).

Based on its lack of evidence, the Court does not consider that Evergreen has established

a prima facie case that cause exists for relief from the stay under § 362(d)(1).  It called no

witnesses, offered no exhibits, and failed to establish under Washington law that a sheriff's sale had been concluded to make it owner of the rents.  Furthermore, assuming that Evergreen had established a prima facie case under § 362(d)(1), the Court finds and concludes that the Debtor has satisfied its burden of proof that relief from the stay should not be granted to Evergreen.  The Debtor has shown, by uncontroverted testimony, that Evergreen is adequately protected by monthly payments, a substantial equity cushion, and insurance.  The Debtor also established that he needs the rents for working capital and for his successful reorganization.  Evergreen's motion to modify stay will be denied and Debtor's motion for turnover of the Washington rents will be granted.

   **IT IS ORDERED** a separate Order shall be entered in conformity with the above:  (1) denying Evergreen's motion to excuse compliance with turnover requirements of 11 U.S.C. § 543(a) and for stay relief under 11 U.S.C. § 362(a) concerning receivership; (2) preliminarily granting Debtor's motion to use cash collateral and setting the final hearing for use of cash collateral on January 10, 2013; and (3) granting Debtor's motion for turnover of prepetition rents from the Kennewick Mall held by the receiver in the amount of $47,330.10.


                              BY THE COURT

                              _Ralph B Kirscher_____
                              HON. RALPH B. KIRSCHER
                              U.S. Bankruptcy Judge
                              United States Bankruptcy Court
                              District of Montana


                                    20